## STIPCICH *v.* METROPOLITAN LIFE INSURANCE COMPANY.

No. 97. Argued November 30, 1927. Reargued March 6, 1928.—
Decided May 21, 1928.

*Mr. Chester I. Long,* with whom *Messrs. George E. Chamberlain, Peter Q. Nyce,* and *G. C. Fulton* were on the brief, for Stipcich.

The condition of health of applicant between the date of application and delivery of the policy is not material under the provisions of the policy. The statutes of Oregon are a part of the policy, as though written therein. Where there is a conflict between a provision in the policy and a statute, the provision in the policy is void. *Nat'l Ins. Co.* v. *Wanberg,* 260 U. S. 71; *Continental Life Ins. Co.* v. *Chamberlain,* 132 U. S. 304.

The policy is the entire contract, and all conditions must be in it. *Northwestern Life Ins. Co.* v. *Riggs,* 203 U. S. 243; *Cable* v. *U. S. Life Ins. Co.,* 111 Fed. 19; *Thompson* v. *Travelers Ins. Co.,* 13 N. D. 444.

The agent must be licensed and he represents the company in all matters. The stipulation attempting to limit the agent's authority is void. The stipulation is not applicable to subsequent events here involved.

Between two constructions of an insurance policy, the one most favorable to the insured is to be taken. *Nat'l Bank* v. *Insurance Co.*, 95 U. S. 673; *Thompson* v. *Phoenix Ins. Co.*, 136 U. S. 297; *American Surety Co.* v. *Pauly,* 170 U. S. 144; *McMaster* v. *New York Life Ins. Co.*, 183 U. S. 25; *Williams* v. *Pacific States Fire Ins. Co.*, 120 Ore. 1.

*Mutual Life Co.* v. *Hilton-Green,* 241 U. S. 613, is not in point.

Other cases cited by defendant in error are inapplicable as no statutes were involved making limitation of agent's authority void.

*Mr. F. Eldred Boland,* with whom *Mr. Samuel Knight* was on the brief, for Metropolitan Life Insurance Company.

The representations made by an applicant for life insurance must be true as of the time of the consummation of the contract; and if there is any change in the physical condition of the applicant material to the risk, occurring between the making of the application and the consummation of the contract, it is imperative upon him to notify the company. *M'Lanahan* v. *Universal Ins. Co.*, 1 Pet. 170; *Piedmont & A. L. Ins. Co.* v. *Ewing,* 92 U. S. 377; *Equitable Life A. Society* v. *McElroy,* 83 Fed. 631; *Cable* v. *U. S. Life Ins. Co.*, 111 Fed. 19; *Watson* v. *Delafield,* 2 Caines 224, 1 Johns. 150, 2 Johns. 526; *Whitley* v. *Piedmont etc. Ins. Co.*, 71 N. C. 480; *Thompson* v. *Travelers Ins. Co.*, 13 N. D. 444; *Graham* v. *General Mut. Ins. Co.*, 6 La. Ann. 4832; *Hart* v. *British & F. M. Ins. Co.*, 80 Cal. 440; *Carleton* v. *Patrons Fire Ins. Co.*, 109 Me. 79; *Harris* v. *Security Ins. Co.*, 130 Tenn. 325; *Traill* v. *Baring,* 4 De

G. J. & S. 318; *British Equitable Ins. Co.* v. *Great Western R. R.*, 38 L. J. Ch. (N. S.) 314; *Canning* v. *Farquhar*, L. R. 16 Q. B. Div. 727.

The policy is the entire contract; including the representations in the application as to the condition of health at the time the policy was delivered. Both the law of Oregon and the policy provide that the policy and appli-cation shall state the entire contract.

The policy as issued and delivered does not in reality state the entire contract; it omits to mention the changed condition, a very important, even paramount, element of the contract.

If Stipcich had read the contract, as it was his duty to do, he would have known that he had not made known his changed condition at all, or that Coblentz, the agent, had omitted to mention it to the insurance company. In either case his continued silence would violate his obligation. *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519; *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613.

An insurer has the right to limit its agents' authority and to provide that the knowledge of the soliciting agent concerning matters material to the risk shall not be imputed to the principal. *Northern Assurance Co.* v. *Grand View Building Ass'n,* 183 U. S. 308; *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519; *Aetna Life Ins. Co.* v. *Moore,* 231 U. S. 543; *Mutual Life Ins. Co.* v. *Hilton-Green, supra; Hartford Fire Ins. Co.* v. *Nance,* 12 F. (2d) 575; *Hartford Fire Ins. Co.* v. *Jones,* 15 F. (2d) 1.

Mr. Justice Stone delivered the opinion of the Court.

The plaintiff brought this action in the circuit court for Clatsop County, Oregon, as beneficiary of a policy by which the defendant had insured the life of her husband, Anton Stipcich. The case was removed for diversity of citizenship to the United States district court for Oregon. The company defended principally on the ground that

Stipcich, after applying for the insurance and before the delivery of the policy and payment of the first premium, had suffered a recurrence of a duodenal ulcer, which later caused his death, and that he failed to reveal this information to the company.

It was shown on the trial by uncontradicted evidence that after his application Stipcich consulted two physicians and that they told him that an operation for the removal of the ulcer was necessary. Plaintiff then made tender of evidence to the effect that Stipcich had communicated this information to Coblentz, the defendant's agent who had solicited the policy, and that the visit to the second doctor was made at Coblentz' request to confirm the diagnosis of the first.

The proffered evidence was excluded and, at the close of the whole case and over plaintiff's objection, the court directed a verdict for the defendant, stating that it did so because Stipcich was under a duty to inform the defendant of his knowledge of the serious ailment of which he had learned after making application for insurance; and that he had failed in that duty since his communication of the facts to Coblentz did not amount to notice of them to the insurance company. The case was taken on writ of error to the court of appeals for the ninth circuit. That court certified to this, certain questions of law presented by the case. Jud. Code, § 239. Without answering, we ordered the entire record to be sent up and the case is here as though on writ of error.

An insurer may of course assume the risk of such changes in the insured's health as may occur between the date of application and the date of the issuance of a policy. Where the parties contract exclusively on the basis of conditions as they existed at the date of the application, the failure of the insured to divulge any later known changes in health may well not affect the policy. *Insurance Co.* v. *Higginbotham,* 95 U. S. 380; see *New York*

*Life Insurance Co.* v. *Moats,* 207 Fed. 481; *Grier* v. *Insurance Co.,* 132 N. C. 542; compare *Gardner* v. *North State Mutual Life Insurance Co.,* 163 N. C. 367. But there is no contention here that the parties contracted exclusively on the basis of conditions at the time of the application. Here both by the terms of the application and familiar rules governing the formation of contracts no contract came into existence until the delivery of the policy, and at that time the insured had learned of conditions gravely affecting his health, unknown at the time of making his application.

Insurance policies are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. *Carter* v. *Boehm,* 3 Burrows, 1905; *Livingston* v. *Maryland Insurance Co.,* 6 Cranch, 274; *McLanahan* v. *Universal Insurance Co.,* 1 Pet. 170; *Phoenix Life Insurance Co.* v. *Raddin,* 120 U. S. 183, 189; *Hardman* v. *Firemen's Insurance Co.,* 20 Fed. 594.

Concededly, the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed this rule to some extent, since information not asked for is presumably deemed immaterial. *Penn Mutual Life Insurance Co.* v. *Mechanics' Savings Bank & Trust Co.,* 72 Fed. 413, 435–441. See *Clark* v. *Manufacturer's Insurance Co.,* 8 How. 235, 248–249; compare *Phoenix Life Insurance Co.* v. *Raddin,* 120 U. S. 183, 190.

But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For, even the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer he is furnishing the data on the basis of which the com-

pany will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure.[1] If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, *Canning* v. *Farquhar*, 16 Q. B. D. 727; *McKenzie* v. *Northwestern Mutual Life Insurance Co.*, 26 Ga. App. 225, or if a policy has been issued, it has a valid defense to a suit upon it. *Equitable Life Assurance Society* v. *McElroy*, 83 Fed. 631, 636, 637. Compare *Traill* v. *Baring*, 4 DeG. J. & S. 318; *Allis-Chalmers Co.* v. *Fidelity & Deposit Co. of*

---

[1] The rule that changes in conditions material to the risk which occur between the opening of negotiations for insurance and the issuance of a policy must be divulged became first established in early British marine insurance. *Grieve* v. *Young*, (Ct. of Session, 1782) Millar, Elements of the Law Relating to Insurances, p. 65; *Fitzherbert* v. *Mather*, 1 T. R. 12. Its adoption here followed as cases presenting the question arose. *McLanahan* v. *Universal Insurance Co.*, 1 Pet. 170; *Watson* v. *Delafield*, 2 Caines (N. Y.) 224; s. c., 1 Johns. (N. Y.) 149; s. c., 2 Johns. (N. Y.) 526; *Andrews* v. *Marine Insurance Co.*, 9 Johns. (N. Y.) 32; *Green* v. *Merchants' Insurance Co.*, 10 Pick. (Mass.) 402; *Neptune Insurance Co.* v. *Robinson*, 11 Gill & J. (Md.) 256; *Snow* v. *Mercantile Mutual Insurance Co.*, 61 N. Y. 160. When written applications began to be used by life insurance companies the rule was invoked as to occurrences after an application had been submitted. *Whitley* v. *Piedmont & Arlington Life Insurance Co.*, 71 N. C. 480; *Thompson* v. *Travelers Insurance Co.*, 13 N. Dak. 444, 453; *Cable* v. *United States Life Insurance Co.*, 111 Fed. 19; *Equitable Life Assurance Society* v. *McElroy*, 83 Fed. 631; but see *Merriman* v. *Grand Lodge Degree of Honor*, 77 Neb. 544; *Ames* v. *New York Life Insurance Co.*, 154 Minn. 111. The result is often explained by saying that a statement in the application is a " continuing representation," or " is made as of the time of the delivery of the policy." *Re Arbitration between Marshall & Scottish Employers' Liability and General Insurance Co., Ltd.*, 85 L. T. 757; *Canning* v. *Farquhar, supra; Blumer* v. *Phoenix Insurance Co.*, 45 Wis. 622; *Equitable Life Assurance Society* v. *McElroy, supra; Cable* v. *United States Life Insurance Society, supra.*

*Maryland,* 114 L. T. 433; compare *Piedmont and Arlington Life Insurance Co. v. Ewing,* 92 U. S. 377.

This generally recognized rule, in the absence of authoritative local decision, we take to be the law of Oregon. Its application here is not affected by Oregon Laws, § 6426(1) c, which provides that the policy shall set forth the entire contract between the parties. The defendant in insisting that Stipcich was under an obligation to disclose his discovery to it is not attempting to add another term to the contract. The obligation was not one stipulated for by the parties, but is one imposed by law as a result of the relationship assumed by them and because of the peculiar character of the insurance contract. The necessity for complying with it is not dispensed with by the failure of the insurer to stipulate in the policy for such disclosure.

The evidence proffered and rejected tended to show that the insured, in good faith, made the required disclosure to Coblentz who, for some purposes, admittedly represented the defendant. If he represented it for this purpose the evidence should have been received. Coblentz was the licensed agent of respondent under Oregon Laws § 6425 which provides that every life insurance company doing business in the state " shall give written notice to the insurance commissioner of the name and residence of, and obtain from him a license for every person appointed by it to act as its agent within this state, which license shall state, in substance, that the company is authorized to do business in this state and that the person named therein is constituted an agent of the company for the transaction of business in this state. . . ." The insured knew no other agent of defendant and dealt with Coblentz alone. So far as appears, no other person or agency was designated under the statute or held out by the defendant as representing it in connection with

Stipcich's application for insurance or the delivery of the policy or as the appropriate person or agency to receive information concerning either of them. The insured delivered the application to Coblentz and later paid to him the first premium, receiving in return the policy and a receipt executed by Coblentz in defendant's name. In communicating to him the information as to his changed condition of health Stipcich acted only in what must have appeared to him the most natural and obvious way to supplement the information already given in his written application.

Defendant relies on the established rule, here expressed in part at least in the printed clause of the application, incorporated in the policy and printed in the margin,[2] that the authority of a soliciting agent to receive the application and transmit it to the company and to deliver the policy when issued, does not include power to vary the terms of the contract, to waive conditions or to receive information sought by questions in the application other than that embodied in it. But Coblentz, when the insured communicated the information to him, did not purport to vary any term or waive any condition of the proposed insurance contract; he did not acquiesce in a variation of the application; nor in connection with the preparation of the written application did he receive any information not written into it. The insured merely communicated information, supplementing the application, to the designated agent of the company for the transaction of business in the state, as the most natural and appropriate channel of communication to the company.

---

[2] " 2. That no agent, medical examiner, or any other person except the Officers at the Home Office of the Company, have power on behalf of the Company; (a) to make, modify or discharge any contract of insurance, (b) to bind the Company by making any promises respecting any benefits under any policy issued hereunder."

In insisting that it was entitled to information of the insured's change of health after the application, but that such information could not be effectively communicated to its agent to receive the application and transact business with insured preliminary to the acceptance of the risk, defendant is not aided by the stipulations of the policy and any doubts as to the agent's implied authority to receive it must be resolved in the light of the Oregon statutes. Oregon Laws § 6435 reads as follows:

"Any person who shall solicit and procure an application for life insurance shall, in all matters relating to such application for insurance and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."

Provisions of this character are controlling when inconsistent with the terms of a policy issued after their enactment. *National Union Fire Insurance Co.* v. *Wanberg,* 260 U. S. 71; *Continental Life Insurance Co.* v. *Chamberlain,* 132 U. S. 304; *Whitfield* v. *Aetna Life Insurance Co.,* 205 U. S. 489. Here the statute does more than provide that the soliciting agent in matters relating to the application and policy does not represent the insured. In connection with those matters it makes him the agent of the company, a phrase which would be meaningless unless the statute when applied to the facts of the case indicated in what respects he represented the company. Here the statute in terms defines the scope of his agency to the extent that he is stated to represent the company " in all matters relating to the application and the policy issued in consequence'" of it. We need not inquire what are the outer limits of that authority, but we think this language plainly makes him the representative of the company in connection with all those matters which, in the usual

course of effecting insurance, are incidental to the application and the delivery of the policy.

Within the requirements of the statute the company may provide by stipulations in the application or other appropriate notice for a suitable method of giving the information, by writing, in a supplemental application or otherwise, or may stipulate, as is not unusual, that the insurance shall not attach on delivery of the policy unless the insured is in good health. To say that under this statute the company's agent to solicit and receive the application and deliver the policy is not its agent also to receive disclosures which supplement the application and which vitally affect the validity of the insurance if not disclosed, is to disregard its language and ignore the obvious purpose of such legislation to require the company to provide some agency within the state with which the insured may safely deal in matters relating to his application. See *Continental Life Insurance Co.* v. *Chamberlain, supra.*

Much reliance is placed by respondent on *Mutual Life Insurance Co.* v. *Hilton-Green,* 241 U. S. 613, where a somewhat similar statute was involved. But there answers known by the insured and the agent to be false were written into the signed application by the agent. Such fraudulent representations known and participated in by the insured obviously could not have estopped the company, but there is nothing in the present case to suggest that the insured was a party to or intended any concealment from the company.

The defendant also argues that it is not affected by the disclosures to the agent because the application provided: " That any statement made to or by, or any knowledge on the part of, any agent, medical examiner or any other person as to any facts pertaining to the Applicant shall not be considered as having been made to or brought to the

knowledge of the Company unless stated in either part A or B of this application." But when Stipcich learned of his condition and told Coblentz about it, neither of them had possession of the application. That had been filled out and sent to the home office of respondent in New York, and disclosure " in either part A or B of this application " of a fact which did not occur until after the application was completed was obviously impossible. It is said that compliance with this provision, even though impossible, was a condition precedent to the securing of insurance. But narrow and unreasonable interpretations of clauses in an insurance policy are not favored. They are prepared by the insurer and if, with equal reason, open to two constructions, that most favorable to the insured will be adopted. *Mutual Insurance Co.* v. *Hurni Co.*, 263 U. S. 167, 174; *Thompson* v. *Phoenix Insurance Co.*, 136 U. S. 287; *American Surety Co.* v. *Pauly*, 170 U. S. 133, 144. The clause must therefore be taken to apply to information given or available when the application was prepared and as inapplicable to knowledge affecting the risk which insured acquired and communicated after the application was signed and delivered to the company's agent.

The only questions certified by the court of appeals, and the only questions pressed upon us here involve the correctness of the rulings of the trial court to which we have alluded. But the respondent's answer sets up that certain answers given in the written application as to the insured's recovery from his earlier illness, its recurrence, and with respect to consultation of physicians, were false and known by him to be false when he signed the application. It is now suggested that Stipcich in his application made a positive misrepresentation regarding a visit to a physician the day before he applied for insurance. If that were clearly established we would consider it neces-

sary to affirm the judgment below, although we think the rulings on which it was based erroneous. But the particular questions and portions of the record relied on, in the light of the medical testimony, are not free from ambiguity. The point is not elaborated in the briefs of either party and was not pressed upon us on the argument. At no time in the entire course of the litigation does the effect of the answers appear to have received any consideration independently of the supposed failure to make sufficient disclosure to the company of knowledge acquired by the insured after the application. Nor, in the absence of the testimony as to the disclosure made to Coblentz, are we able to say what its bearing may be on the alleged misstatements in the application. Under such circumstances we must decline to pass upon this defense. Compare *Southeastern Express Co.* v. *Robertson,* 264 U. S. 541; *Ewing* v. *Howard,* 7 Wall. 499, 503. The truthfulness of the answers and their effect will be open for consideration on the new trial.

*Reversed.*