**NEW YORK LIFE INS. CO. v. WEBBER et al.**
**No. 2679.**

Circuit Court of Appeals, First Circuit.
June 27, 1932.

MORTON, Circuit Judge, dissenting.

F. H. Nash, of Boston, Mass. (Richard Wait, of Boston, Mass., on the brief), for appellant.

A. K. Cohen, of Boston, Mass. (Max E. Bernkopf and Laurence M. Ring, both of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

These are two appeals, the first from a decree dismissing the plaintiff's bill brought to obtain the cancellation of two policies of insurance issued by it on the life of the respondent William Webber; the second from the denial of the plaintiff's petition for leave to file a bill of review of that decision, which it is unnecessary to consider.

Webber is a resident of Brookline, Mass. The application was made in Boston, Mass. It provides that the insurance shall not take effect until the delivery of the policies, which took place in Massachusetts. They are, therefore, Massachusetts contracts subject to the laws of that state. Dolan v. Mutual Reserve Fund Life Ass'n, 173 Mass. 197, 53 N. E. 398. By the Laws of Massachusetts (Gen. Laws, c. 175, § 186), no misrepresentations such as here relied on avoid the policy unless "made with actual intent to deceive, or unless the matter misrepresented * * * increased the risk of loss."

In January, 1929, the plaintiff company issued the policies in question in the aggregate amount of $25,000. Both were based upon a single application which was dated December 27, 1928.

On April 22, 1930, Webber suffered a stroke of paralysis resulting in total and permanent disability, a condition which entitled him to payments under the policy, if valid. On application being made for such payment, the insurance company investigated the matter and discovered that the statements in the application above referred to were, as it believed, false and fraudulent. It accordingly brought the present suit for the cancellation of the policies on that ground. The District Judge, after full hearing, found that no fraudulent misrepresentations had been made by Webber and dismissed the bill. The plaintiff's contention is that the indisputable facts disclose that the District Judge clearly erred in dismissing the bill.

It appeared in the course of the hearing from undisputed testimony, and from admissions by the defendant to his physicians, that three years before December 4, 1928, he had a heart attack of some kind; that he was then under treatment for dizziness and "some attacks" which he had at that time; that on December 4, 1928, a physician was called by the applicant's son, in response to which he went to a store, where he found Webber sitting down. Webber then complained of being dizzy and faint, a numbness in his hands and feet, and a blurred vision. He was taken home in an automobile. At that time he told the physician of the heart attack three years before—pain around the heart and numbness of his hands and feet.

The physician on December 4 found his diastolic blood pressure was 110, which is deemed "high" by the medical profession, and also found a trace of albumin in his urine. The physician at this time made a primary diagnosis of an acute attack of indigestion, and an additional diagnosis of nephritis, or Bright's disease.

He communicated his diagnosis to Webber, and discussed his condition with him generally, and advised him as to his mode of living and diet,—plenty of rest and sleep, absence of worry, etc., gave him a stimulant and medicine to aid his digestion; and in summing up his condition replied, in answer to a question, that, if he were making an examination of Webber on December 27, 1928 (the date of the application for the policies of insurance), he would consider it pertinent to know of the condition which obtained on December 4.

His condition was serious enough on December 4 to call in a heart specialist in consultation, to whom Webber stated that within a week he had pains about his heart and spoke of his attacks in New York three years previous, and that on going upstairs he suffered from shortness of breath for ten minutes.

That Webber was conscious of the significance of these attacks and apprehensive as to his condition was apparent to the specialist from Webber's manner of asking questions and his tenseness.

The first physician made several calls, and under treatment the acute trouble cleared up. In less than four weeks, and within ten days after he was advised that his urine had cleared up, the insured made the application for the policies of insurance here involved, in which he stated that no albumin had ever been found in his urine; that he had not had high blood pressure; that he had not consulted any physician for or suffered from any disease of the heart, stomach, or kidneys, or for any other trouble within five years.

Of course, he could not have forgotten this attack occurring about three weeks previous, his apprehensiveness as to his then condition, the calling in of the heart specialist, the high blood pressure, his attacks of dizziness, numbness, and shortness of breath; yet he concealed all this from the insurance company. It is too much of a strain on one's credulity to accept the conclusion that he concealed these facts because he thought these attacks were of no consequence. Notwithstanding the assurance of the specialist that he need not worry, that his heart was not involved, it is clearly apparent from the record that the specialist was endeavoring to relieve his mind because of his tenseness of appearance and the necessity of absence from worry to ensure a recovery, a condition to recovery emphasized by the physician first summoned.

The applicant in good faith was bound to disclose these facts. Stipcich v. Mut. Life Insurance Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895; Adler v. New York Life Ins. Co. (C. C. A.) 33 F.(2d) 827, 832; Mutual Life Ins. Co. v. Hurni Packing Co. (C. C. A.) 260 F. 641, 645, and the concealment of them was obviously done with the intent to deceive the company as to his past medical history. The applicant could not have failed to realize that a disclosure of an attack of the nature he had within four weeks, and that he had been under the care of a physician for such an attack within two weeks of the time of making his application, and with the history of a heart attack three years previous, would probably result in a rejection of his application.

The issue is not whether the applicant appeared to have been in good health at the time of signing the application, or whether any connection was established between the concealed facts and his illness, under which the indemnity is claimed, but whether the applicant knowingly concealed facts of which he knew the insurance company in good faith was entitled to be informed.

We think it is clear that Webber concealed these material facts with the intent of deceiving the insurance company, and the finding of the District Court to the contrary was clearly wrong.

The decree of the District Court is reversed, with costs. The District Court is directed to issue a decree declaring the policies null and void, and that they be delivered up for cancellation as prayed for.

MORTON, Circuit Judge, dissents.